**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

DARNELL NOLLEY,                       :
                                      :
                   Plaintiff,         :
                                      :
         VS.                          :        CASE NO. 5:15-CV-75-CAR-MSH
                                      :
CYNTHIA NELSON, *et al.*,             :
                                      :
                   Defendants.        :
_____

## ORDER & RECOMMENDATION

Presently pending before the Court is Defendants' pre-answer motion to dismiss. (ECF No. 21).  Also pending before the Court are Plaintiff's motions to supplement his complaint (ECF Nos. 19, 35, 46, 48), for preliminary injunctive relief (ECF No. 31-1), for appointment of counsel (ECF No. 27), to stay the proceedings (ECF No. 28), and for leave to file a surreply brief in opposition to Defendants' motion to dismiss (ECF No. 39).  For the reasons explained below, it is recommended that Defendants' motion to dismiss be granted in part and denied in part and that Plaintiff's motion for injunctive relief and his four motions to supplement be denied.  Finally, Plaintiff's remaining motions are denied.

## BACKGROUND

The present action arises out of Plaintiff's confinement in segregation at Macon State Prison ("Macon State").  In his Amended Complaint, Plaintiff alleges that he was confined in a single cell for twenty-four hours a day for the duration of his incarceration

at Macon State in violation of his Fourteenth Amendment right to due process.[1]  Am. Compl.  ¶ 25.  Specifically, Plaintiff states that immediately upon arriving at Macon State, he was placed in "a segregation housing unit and refused all of his personal property."  Am. Compl. ¶ 12.  Four days later, Defendant Giles—a counselor at Macon State—provided Plaintiff with an "Administrative Segregation: Program Assignment Memo," signed by both Defendant Warden Gregory McLaughlin and Defendant Giles and assigning him to Phase One of the Tier II Program.[2]  Am. Compl. ¶ 13.  Plaintiff takes issue with the Assignment Memo for two reasons: (1) although the Memo stated that Plaintiff had been assigned to the Tier II Program "for the safe and secure operation of the facility," it failed to provide any facts or other information describing how Plaintiff posed such a threat, *id.* ¶¶ 13-14; and (2) Defendant Giles signed the Assignment Memo "in the place reserved exclusively for the Tier II Counselor, i.e., Defendant Bostick," Pl.'s Resp. in Opp'n of Mot. to Dismiss 3, ECF No. 31.  Plaintiff thus avers that Defendant Giles was not authorized to sign the memo because he was not a Tier II Counselor nor was he a member of the Classification Committee.  *Id.* ¶ 15.

---

[1] Plaintiff was housed in administrative segregation for approximately 351 days. *See* Am. Compl. ¶ 11, ECF No. 9-1 (Plaintiff was transferred from Hays State Prison to Macon State on June 9, 2014); First Proposed Suppl. Compl. ¶ 17, ECF No. 20 (Plaintiff was transferred from Macon State to Valdosta State Prison on May 26, 2015).

[2] The Tier II Program is labeled as an administrative segregation program, but inmates "assigned to the TIER II Unit have been placed in Administrative Segregation for long-term disciplinary sanctions."  Am. Compl. Ex. A, ECF No. 9-2.  The Tier II Program contains three "phases," with varying types of restrictions on commissary purchases, phone usage, mail, library access, etc. S*ee* Am. Compl. Ex. B, ECF No. 9-2.  However, inmates who are deemed to be a threat to the secure operation of the prison are subject to an additional fourth phase. *Id.* ¶ 24.  When inmates are first placed in Tier II, they are placed in the most restrictive phase—Phase One. *Id.* ¶ 21. Inmates will move through the phases and eventually be released from the Tier II Program by completing "mandatory behavior-modification programs, comprising [their] individual program packets." *Id.*

Plaintiff further alleges that the members of the Classification Committee, Defendants Trevonza Bobbitt, Samuel Ridley, and Stephen Bostick,[3] failed to comply with the Georgia Department of Corrections' Standard Operating Procedure ("SOP"), which requires members of the Classification Committee to "conduct an initial Tier II administrative segregation placement hearing."[4] Am. Compl. ¶¶ 6-8, 16, 17-19. Plaintiff avers that by failing to conduct this initial hearing, he was deprived of the opportunity to appeal his assignment to segregation. *Id.* ¶ 16. Plaintiff states that "[t]hroughout his confinement in the Tier II Program, he has remained on Phase One and has not been provided with any meaningful, post-placement periodic[] review of his segregation confinement" and further, that his segregation is punitive and indefinite. Am. Compl. ¶¶ 40-43; *see also* Am. Compl. Ex. A.

Plaintiff contends that the Tier II Program imposes "atypical and significant hardship[s]" on him. Am. Compl. ¶ 37. Examples of these alleged hardships include: mandated solitary confinement for twenty-four hours a day, *id.* ¶ 25; the utilization of isolation cells with no mirror and no "desk[], a place on which to sit, the cautionary safety water sprinkler, etc.," *id.* ¶¶ 25, 27; human contact and environmental or sensory

---

[3] Defendant Bobbitt is the supervisor of Macon State's Tier II Program. Am. Compl. ¶ 6. Defendant Ridley is the Officer in Charge of Macon State's Tier II Program. *Id.* ¶ 7. Defendant Bostick is the counselor for the prisoners housed in the Tier II Program. *Id.* ¶ 8.

[4] Plaintiff also specifically references SOP II B09-0003, which provides "when the offender is assigned to the Tier II Program, the Classification Committee will hold an administrative segregation hearing within 96 hours" and that "[t]he Classification Committee will review all recommendations for assignments of an offender to the Tier II Program and submit a Recommendation [based on the eligibility criteria] . . . [and that] [t]his Recommendation will be submitted directly to the Warden or designee for approval or disapproval," and thereafter "[t]he Facilities Director or Designee will complete review of the Offender's appeal." Am. Compl. ¶¶18-20.

stimuli are denied via metal strips on doors and metal coverings over the windows, *id.* ¶¶ 26-27, 38; out-of-cell recreation is supposedly limited to five hours per week and is only permitted to take place in "a seven by sixteen-foot cage, enclosed by high, concrete walls covered by a metal grate," but such out-of-cell recreation is rarely permitted, *id.* ¶¶ 28-29; only one two-hour, non-contact visit per month is permitted, *id.* ¶ 31; access to facility phones is limited to one fifteen-minute phone call per month, *id.* ¶ 32; virtually all personal property is confiscated aside from stationary items—i.e., paper, pens, envelops, etc., *id.* ¶¶ 33-34; commissary privileges are revoked and not even hygiene items may be purchased or retained, *id.* ¶ 34; access to "personal photos, books of any nature, magazines, newspapers, periodicals, religious literature, educational and legal materials, etc." are denied, *id.* ¶ 35; and finally, access to group religious worship services, the general and law libraries, television, and educational and vocational programs is denied, *id.* ¶ 36.[5]   Plaintiff avers that throughout his incarceration at Macon State he was subjected to the above conditions and that because "confinement in the Tier II Program is stark to the point of being akin to a sensory deprivation tank" Plaintiff "almost exclusively . . . sees nothing, does nothing, and interacts with no one, experiencing abstract tedium." *Id.* ¶¶ 38, 45.

Plaintiff contrasts these conditions with those of inmates in the general population: 110 hours per week of out-of-cell recreation and social interaction is typically allowed, *id.* ¶ 30; two to six hours of outside recreation each day is permitted, *id.*; a minimum of

---

[5] Plaintiff also avers that "the restrictions and conditions of confinement [in Tier II] are more severe in nature than those of prisoners housed in disciplinary segregation and high-max units." Am. Compl. ¶ 43.

eight six-hour, contact visits per month are provided, *id.* ¶ 31; access to facility phones is unfettered whenever inmates are out of their cells, *id.* ¶ 32; and access to group religious worship services, the general and law libraries, television, and educational and vocational programs is not restricted, *id.* ¶ 36.

On March 9, 2015, the Court received Plaintiff's Complaint.   (ECF No. 1.) However, on preliminary review, the complaint was dismissed without prejudice for failure to state a claim, as Plaintiff merely alleged that he was confined in punitive segregation without a disciplinary hearing but otherwise failed to detail the conditions of confinement, how those conditions were atypical in comparison to those in general population, or whether he was deprived due process.  Order 3-5, April 13, 2015, ECF No. 5. On May 4, 2015, Plaintiff filed a motion to amend the dismissed complaint and attached a proposed amended complaint.  (ECF Nos. 9, 9-1.)  The Court then conducted a review of the amended complaint, found that the proposed amendments were not futile, vacated the prior judgment, and directed service on Defendants. Order 2-3, June 1, 2015, ECF No. 11.  Defendants move to dismiss the complaint, contending that (1) Plaintiff fails to state a claim, (2) Plaintiff is not entitled to the relief sought and thus dismissal is required, and, alternatively, (3) they are entitled to qualified immunity.  (ECF No. 21.) Plaintiff filed a response in opposition to Defendants' motion to dismiss (ECF No. 31), multiple motions to supplement (ECF Nos. 20, 35, 46, 48), a motion to appoint counsel (ECF No. 27), a motion to stay the proceedings until Plaintiff's motions to supplement and to appoint counsel are ruled on (ECF No. 28), and a motion for leave to file a surreply brief in opposition to Defendants' motion to dismiss (ECF No. 39).   These

motions are ripe for review.

## DISCUSSION

### I.     Motions to Supplement Complaint

On July 7, 2015, Plaintiff filed a motion for leave to supplement his amended complaint (ECF No. 19) and a proposed supplemental complaint (ECF No. 20). Therein, Plaintiff seeks to add the following claims: (1) First Amendment claims against Defendant McLaughlin for a "raid of plaintiff's legal papers," for a "denial of facility legal services," and for Plaintiff's transfer from Macon State to Valdosta State Prison ("VSP") each ordered by Defendant McLaughlin in retaliation for the filing of this complaint, First Proposed Suppl. Compl. ¶¶ 15-20, 24-25, ECF No. 20; (2) a First Amendment claim against Adrian Nelson, a "correctional librarian" who assisted Defendant McLaughlin in denying Plaintiff's access to "facility legal services" in retaliation for the filing of this lawsuit, *id.* ¶¶ 19-21, 24-25; and (3) virtually identical due process claims against various VSP prison officials for his continued placement in Tier II Program at VSP, *id.* ¶¶ 26-46.  Defendants filed a response in opposition to the proposed supplemental complaint, alleging that such an amendment/supplementation is futile. (ECF No. 30.)  Thereafter, Plaintiff filed three more motions to supplement (ECF Nos. 35, 46, 48), seeking to add various First Amendment claims against officials at both VSP and Ware State Prison ("Ware")—where Plaintiff was subsequently transferred and is currently incarcerated—and identical due process claims against officials at Ware for his continued placement in the Tier II Program.  Defendants also oppose these proposed supplemental complaints.  (ECF Nos. 37, 47.)

Federal Rules of Civil Procedure Rule 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Fed. R. Civ. P. 15(d).  Since Plaintiff has already amended once as a matter of course (ECF No. 9), he must now seek leave to amend/supplement pursuant to Federal Rules of Civil Procedure Rule 15(a)(2), and such leave should be "freely give[n]" when "justice so requires."[6]  However, "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile."  *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004).  For the reasons discussed below, it is recommended that all of Plaintiff's motions to supplement be denied.

A.     Unrelated Claims

A plaintiff may set forth only related claims in a single lawsuit.  In other words, Plaintiff may not join unrelated claims and various defendants in his Amended Complaint unless the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences *and* if any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20 (emphasis added).  "[A] claim arises out of the same transaction or occurrence if there is a logical relationship between the claims." *Construction Aggregates, Ltd. v. Forest Commodities Corp.,* 147 F.3d 1334, 1337 n.6

---

[6] "[T]he formal distinction between amendment and supplementation is of no consequence, and courts routinely apply Rule 15(a)'s 'freely given' standard to Rule 15(d) motions to supplement." *McGrotha v. Fed Ex Ground Package Sys.*, No. 5:05-cv-391 CAR 2007 WL 640457, at *2 (M.D. Ga. Feb. 24, 2007) (internal quotation marks and citation omitted).

(11th Cir. 1998). Thus, "Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." G*eorge v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Plaintiff's allegations fail to show any "logical relationship" between the claims against the VSP and Ware officials and those relating to his confinement at Macon State Prison. The decision by a Ware or VSP prison official to (allegedly) unconstitutionally confine Plaintiff to segregation is wholly unrelated to the alleged due process violation perpetrated by Defendants at Macon State. Furthermore, the Middle District of Georgia is not the proper forum for the allegations against prison officials at Ware because Waycross, Georgia falls within the jurisdiction of Southern District of Georgia. For these reasons, it is recommended that Plaintiff's motions to supplement concerning the claims against prison officials at VSP and Ware (ECF Nos. 19, 35, 46, 48) be denied. *See* 28 U.S.C. § 1391(b); *see also* 28 U.S.C. § 1406(a) (authorizing district court to dismiss "a case laying venue in the wrong division or district").

### B.     Exhaustion of Administrative Remedies

Additionally, to the extent Plaintiff's supplemental allegations against Defendants McLaughlin and Nelson for retaliation could be said to arise from the same transaction or occurrence, Plaintiff should not be permitted to supplement his complaint because such an amendment would be futile as Plaintiff failed to exhaust his administrative remedies prior to filing his supplemental complaint. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004) ("[A] district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile."). Although "Rule

15(d) does authorize a court to permit a party to supplement a pleading even though the original pleading is defective in its statement of a claim for relief . . . that rule does not and cannot overrule a substantive requirement or restriction contained in a statute (especially a subsequently enacted one)." *Harris v. Garner*, 216 F.3d 970, 983 (11th Cir. 2000) (internal quotation marks and citations omitted).

Title 42, United States Code section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "[W]hen a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005) (internal quotation marks and citation omitted). The argument that a plaintiff has failed to satisfy section 1997e(a) is properly raised in a motion to dismiss.[7] *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) ("[E]xhaustion should be decided on a Rule 12(b) motion to dismiss[.]"). Furthermore, since dismissal for failure to exhaust is not an adjudication on the merits, the Court can resolve factual disputes using evidence from outside the pleadings. *Id.* at 1376.

"[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a

---

[7] Defendants asserted the issue of exhaustion in their response to Plaintiff's motion to supplement. Defs.' Resp. in Opp'n to First Mot. to Suppl. 5-8, ECF No. 30. Exhaustion is a precondition of filing such actions in federal court and the Court cannot waive the exhaustion requirement. *See, e.g., Booth v. Churner*, 532 U.S. 731, 734 (2001).

two-step process." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's versions of the facts as true." *Id.* If, taking plaintiff's facts as being true, the defendant is entitled to dismissal for failure to exhaust, then the complaint should be dismissed. *Id.* "If the complaint is not subject to dismissal at the first step . . . , the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* The defendant bears the burden of proof during this second step. *Id.*

Defendants contend, and submit sworn affidavits in support thereof, that Plaintiff failed to exhaust his administrative remedies prior to filing the proposed supplemental complaint. Defs.' Resp. in Opp'n to First Mot. to Suppl. 5-8, ECF No. 30. Plaintiff submitted grievance #198235 on June 17, 2015, alleging that he was "shaken down" by Macon State correctional officers and subsequently transferred to VSP in retaliation for filing the instant lawsuit. Walker Aff. Attach. H, ECF No. 30-1. The grievance was rejected on June 25, 2015, but Plaintiff did not appeal this rejection. *Id.* Plaintiff also submitted a grievance on April 15, 2015—Grievance #194599—grieving a denial of access to the law library at Macon State (although the grievance does not allege that the denial was retaliatory in nature). Walker Aff. Attach. G, ECF No. 30-1. This grievance was denied on April 22, 2015 and Plaintiff did not appeal the denial. *Id.*

At the first step of the exhaustion analysis, it is clear Plaintiff failed to his exhaust administrative remedies regarding his supplemental allegations against Adrian Nelson. Plaintiff does not address or contradict Defendants' allegations as to Grievance #194599.

Pl.'s Br. in Supp. of First Mot. to Suppl. 2-3, ECF No. 40. As such, Defendants' statements are thus accepted as true and uncontested. It is clear that Plaintiff failed to complete the grievance process as to grievance #194599 prior to filing this action, and thus Plaintiff's retaliation claims against Adrian Nelson are due to be dismissed. However, as to Plaintiff's retaliation claims against Defendant McLaughlin, Plaintiff asserts that on July 7, 2015 he filed a grievance appeal following the rejection of grievance #198235, but that he never received a response. *Id.* at 2. Thus, taking Plaintiff's factual assertions as true, his retaliation claims are not subject to dismissal at the first step of the *Turner* analysis.

At the second step of the exhaustion analysis, the Court "proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082-83. Plaintiff contends—without providing evidence to bolster such an assertion—that by filing a grievance appeal on July 7, 2015, he thus properly exhausted. Plaintiff is incorrect. Pursuant to the Department of Corrections' grievance procedure, an inmate must file the original grievance within ten days from the date the inmate becomes aware of the facts giving rise to the grievance. Walker Aff. Attach. A at 8, ECF No. 30-1.[8] Thereafter, the warden has 40 days from the date of submission to deliver a decision to the inmate and if the inmate disagrees with the warden's decision, he has seven days to submit an appeal. Walker Aff. Attach. A at 10. Once the inmate submits an appeal, the Central Office then has 100 days to deliver a decision to the

---

[8] Attachment A to Walker's Affidavit is the Georgia Department of Corrections' Standard Operating Procedure.

inmate.  Walker Aff. Attach. A at 13.  Even assuming that Plaintiff filed an appeal following the rejection of this grievance, Plaintiff did not wait for a response to that appeal: Plaintiff filed his first motion to supplement on the same day he allegedly filed the grievance appeal, July 7, 2015.  First Proposed Suppl. Compl. 15.  Plaintiff, therefore, failed to exhaust.  *See*, *e.g.*, *Williams v. Barrow*, 559 F. App'x 979, 987 (11th Cir. 2014) (explaining that the plaintiff did not properly exhaust administrative remedies even though he submitted his grievance appeal form before filing suit, because "the appeal was not denied until November 16, 2011, which was after Williams had filed his complaint in the district court."); *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012) ( "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint.") (internal quotation marks and citations omitted).  It is therefore recommended that Plaintiff's motion to supplement to add First Amendment claims against Defendant McLaughlin (ECF No. 19) be denied.

## II.   Motion for Injunctive Relief

Plaintiff moves for preliminary injunctive relief, seeking release from his continued confinement in administrative segregation.[9]  (ECF No. 31-1.)  Such relief is only appropriate where the movant demonstrates that: (a) there is a substantial likelihood

---

[9] Although not docketed as a separate motion for preliminary injunction, in his response to Defendants' motion to dismiss, Plaintiff attaches a "Memorandum of Law in Support of Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction."  (ECF No. 31-1.)  Plaintiff previously moved for a TRO against the Macon State Defendants (ECF No. 7), however that motion was denied as moot after Plaintiff's complaint was dismissed for failure to state a claim.  Order 2-3, May 1, 2015, ECF No. 8.  The Court thus construes this Memorandum in Support as a renewed Motion for Preliminary Injunction.

of success on the merits; (b) the preliminary injunction is necessary to prevent irreparable injury; (c) the threatened injury outweighs the harm that a preliminary injunction would cause to the non-movant; and (d) the preliminary injunction would not be adverse to the public interest. *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001). An irreparable injury "must be neither remote nor speculative, but actual and imminent." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citations omitted).

Although Plaintiff does not clarify whether this motion seeks release from the Tier II Program at VSP or at Ware, in either instance, Plaintiff's motion should be denied. As detailed above, the Court finds that Plaintiff's supplemental claims against the VSP and Ware officials should be dismissed. The Court lacks jurisdiction to issue an injunction against a non-party. *See, e.g., Infant Formula Antitrust Litig., MDL 878 v. Abbott Labs.*, 72 F.3d 842, 842-83 (11th Cir. 1995) (declining to find that either the All Writs Act or the Federal Rules of Civil Procedure provide subject matter jurisdiction when seeking an injunction against a non-party); *Faircloth v. Baden*, No. 1:11-cv-113-WLS, 2012 WL 3202949, at *4 (M.D. Ga. July 9, 2012) ("The Court lacks subject matter jurisdiction to issue a preliminary injunction against a non-party."). Accordingly, it is recommended that Plaintiff's motion for injunctive relief (ECF No. 31-1) be denied.

## III.   Motion to Dismiss

Defendants contend that Plaintiff's complaint should be dismissed because: (1) Plaintiff fails to state a cognizable claim; (2) Plaintiff's claims against Defendant McLaughlin in his official capacity are barred by the Eleventh Amendment; (3) Plaintiff is not entitled to compensatory or punitive damages; and (3) Defendants are entitled to

qualified immunity. (ECF No. 21.)  For the reasons explained below, it is recommended that the motion be granted in part, dismissing the claims against Defendant McLaughlin in his official capacity and Plaintiff's claims for injunctive and declaratory relief and for compensatory and punitive damages, and denied in part, retaining Plaintiff's Fourteenth Amendment claims against Defendants in their individual capacities for nominal damages.

A.    Failure to State a Claim

When considering a 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the plaintiff's complaint and limit its consideration to the pleadings and exhibits attached thereto.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  "[A] formulaic recitation of the elements of a cause of action will not do[.]" *Id.*  Although the complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims, *id.* at 556, "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

### 1.    Defendants McLaughlin, Bobbitt, Ridley, and Bostick

Plaintiff contends that Defendants violated his right to procedural due process in classifying and confining him in the Tier II Program at Macon State without notice or an opportunity to be heard.  Defendants move to dismiss the claims, arguing that Plaintiff has not stated a claim for denial of his procedural due process rights because he has not shown that a protected liberty interest was implicated by his classification to and confinement in the Tier II Program.

It is well-settled that prisoners have "no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison." *Kramer v. Donald*, 286 F. App'x 674, 676 (11th Cir. 2008); *see also Meachum v. Fano*, 427 U.S. 215, 223-24 (1976) (finding the transfer of a prisoner to less agreeable prison does not implicate a liberty interest).  However, a prisoner may claim a violation of a protected liberty interest arising out of his confinement in punitive segregation if the placement (1) "will inevitably affect the duration of his sentence;" or (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Plaintiff alleges no facts suggesting that his confinement has "inevitably affect[ed] the duration of his sentence," but rather contends that the conditions of confinement in the Tier II Program "impose[] atypical and significant hardship[s]" in comparison to the "ordinary incidents of prison life."  Plaintiff was held in solitary confinement for twenty-four hours a day, for a total of 351 days. *Id.* ¶ 11, 25; First Proposed Suppl. Compl. ¶ 17, ECF No. 20.  Additionally, Plaintiff was deprived of virtually all human contact and

environmental or sensory stimuli due to not only his solitary confinement but also due to the metal strips on doors and metal coverings over the windows, *id*. ¶¶ 26-27; the limitations on phone calls and visitation, *id.* ¶¶ 31-32; the denial of access to group religious worship services, the general and law libraries, television, and educational and vocational programs, *id.* ¶ 36; and the restrictions on possessing any "personal photos, books of any nature, magazines, newspapers, periodicals, religious literature, educational and legal materials, etc.," *id.* ¶ 35.  Conversely, Plaintiff states that inmates in general population are: permitted to be out of their cells for recreation and other social interactions for 110 hours per week, *id.* ¶ 30; allowed a minimum of eight six-hour, contact visits per month, *id.* ¶ 31; granted unfettered access to phones whenever they are out of their cells, *id.* ¶ 32; and are permitted access to the general and law libraries, televisions, and educational, vocational, and religious programs, *id.* ¶ 36.  Moreover, Plaintiff's cell was essentially an isolation cell with no mirror and no "desk[], a place on which to sit, the cautionary safety water sprinkler, etc."  Am. Compl. ¶¶ 25, 27.  Plaintiff was denied all access to the commissary, including the ability to purchase hygiene related items, and was deprived of virtually all his personal property.  *Id.* ¶¶ 33-34.  Finally, Plaintiff avers that the Tier II Program's policy limits out-of-cell recreation to only five hours per week and only permits such exercise to be conducted in "a seven by sixteen-foot cage, enclosed by high, concrete walls covered by a metal grate."  *Id.* ¶ 28.  However, Plaintiff also states that such out-of-cell recreation was rarely permitted.  *Id.* ¶ 29.  By contrast, inmates in general population are permitted two to six hours of *outside* recreation *each day*.  *Id.* ¶ 30.

Defendants, however, argue that Plaintiff's combined allegations fail to fulfill the *Sandin* requirements.  Defendants first contend that Plaintiff's allegations that he was denied access to the law library and that he was unable to attend group religious worship services do not, in and of themselves, constitute First Amendment violations.  Br. in Supp. of Mot. to Dismiss 7-8, ECF No. 21-1.  Moreover, inmates are not entitled to group religious services, provided they are not deprived of an opportunity to worship within their cell, and the loss of access to educational, religious, or vocational programs do not constitute "atypical or significant hardship[s]."  *Id.*  Similarly, Defendants state that deprivations of phone, contact visits, television, and commissary privileges have been held to be typical of the ordinary incidents of a prisoner's life.  *Id.* at 8-10.  Defendants also argue that Plaintiff's described conditions of his cell as an "isolation cell" does not amount to an atypical hardship.[10]  *Id.* at 10.  In support of these arguments, Defendants cite to a number of cases from the Middle District of Georgia, including: *Whiting v. Owens*, No. 5:14-CV-0104-CAR, 2014 WL 2769027 (M.D. Ga. June 18, 2014); *Abanifi v. Oubre*, No. 5:12-CV-421 MTT, 2013 WL 618539 (M.D. Ga. Jan. 25, 2013) *report and*

---

[10] Defendants conclude by stating that "these alleged aspects of the Tier II Program do not include any factual comparison with the conditions in the general population . . . and, accordingly, fail to provide the basis for the finding of a liberty interest."  *Id.* at 11.  This assertion is inconsistent with Plaintiff's pleading: Plaintiff states how frequently inmates in general population are permitted contact visits and phone access, described what is not in his "isolation" cell, and states "Tier II prisoners are denied access to *many other privileges afforded prisoners in the general population*, including access to the prison's general and law libraries, group religious worship services, education and vocational opportunities, access to televisions, etc."  Am. Compl. ¶ 36 (emphasis added).  Based on these statements, and drawing all inferences in Plaintiff's favor, Plaintiff did sufficiently allege facts indicating the differences between what a prisoner in Tier II would experience and what a prisoner in general population would experience.  *See Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014) (stating that Courts should liberally construe *pro se* pleadings).

*recommendation adopted sub nom. Abanifi v. Oubre*, No. 5:12-CV-421 MTT, 2013 WL 617062 (M.D. Ga. Feb. 19, 2013); *Gilyard v. McLaughlin*, No. 5:14-CV-185 MTT, 2015 WL 1019910 (M.D. Ga. Mar. 9, 2015).

Defendants' reliance on these cases, however, is misplaced. These cases either turn on: (1) the fact that the plaintiff failed to allege sufficient facts establishing an "atypical and significant hardship" by detailing how the conditions in the Tier II Program differ from the "ordinary incidents of prison life";[11] (2) the plaintiffs' alleged deprivations only involved commissary, visitation, group activity, and/or visitation restrictions;[12] or (3) involved short periods of time in segregation.[13] By contrast, Plaintiff's Amended Complaint not only details the conditions of confinement he experienced but also contrasts the Tier II restrictions with what a prisoner in general population would experience. Plaintiff was not held in segregation for a short period of time, but rather was contained in solitary confinement for just shy of a year and was only "released" from such confinement because he was transferred to another prison. Finally, Plaintiff does not simply allege that he was denied commissary privileges, phone calls, contact visits, or television privileges. Plaintiff states that he was deprived of human contact and environmental stimuli, confined to solitary confinement for 24 hours a day, and denied out-of-cell recreation.

---

[11] *Abanifi v. Oubre*, No. 5:12-CV-421 MTT, 2013 WL 618539, at *4 (M.D. Ga. Jan. 25, 2013); *Gilyard v. McLaughlin*, No. 5:14-CV-185 MTT, 2015 WL 1019910, at *2 (M.D. Ga. Mar. 9, 2015).

[12] *Abanifi v. Oubre*, No. 5:12-CV-421 MTT, 2013 WL 618539, at *3 (M.D. Ga. Jan. 25, 2013); *Whiting v. Owens*, No. 5:14-CV-0104-CAR, 2014 WL 2769027, at *2 (M.D. Ga. June 18, 2014).

[13] *Abanifi v. Oubre*, No. 5:12-CV-421 MTT, 2013 WL 618539, at *3 (M.D. Ga. Jan. 25, 2013); *Whiting v. Owens*, No. 5:14-CV-0104-CAR, 2014 WL 2769027, at *3 (M.D. Ga. June 18, 2014).

Particularly troubling is the extreme limitation on and alleged outright denial of out-of-cell exercise, especially when contrasted with the experiences of inmates in general population. "To deny a prisoner *all* opportunity for exercise outside his cell would, the cases suggest, violate the Eight Amendment unless the prisoner posed an acute security risk if allowed out of his cell for even a short time." *Anderson v. Romero*, 72 F.3d 518, 527 (7th Cir. 1995).  This is because exercise is considered an "identifiable human need," *Wilson v. Seiter*, 501 U.S. 294, 304 (1991), and an "indispensable component of preventative medicine." *Anderson*, 72 F.3d at 528.  "[C]onfinement to a cell for twenty-three and one-half hours per day for periods of months and absence of outdoor exercise, may make out an eighth amendment violation." *McGruder v. Phelps*, 608 F.2d 1023, 1025 (5th Cir. 1979);[14] *see also Spain v. Procunier*, 600 F.2d 189, 199-200 (9th Cir. 1979) (outdoor exercise for inmates in isolation for extended periods of time is required for the "psychological and physical well being of the inmates[]"); *Miller v. Carson*, 563 F.2d 741, 751 n.12 (5th Cir. 1977) (A deprivation of exercise "may constitute an impairment of health forbidden under the eighth amendment.").  *But see Hayward v. Procunier*, 629 F.2d 599, 603 (9th Cir. 1980) (failure to temporarily provide inmates with outdoor exercise during a "genuine emergency" did not constitute cruel and unusual punishment).  Defendants argue that Plaintiff's allegation that Tier II prisoners are rarely permitted the mandatory five hours per week of out-of-cell recreation,

---

[14] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

"unaccompanied by any allegation of how often he has been denied the recreation time . . . or prevented entirely from exercising or engaging in all recreational activity, is insufficient to establish that his confinement exceeded the *Sandin* limits." Br. in Supp. of Mot. to Dismiss 11. This argument is unpersuasive. Plaintiff specifically states that he was subjected to the conditions of confinement described in his Amended Complaint, including the five-hour limitation on and the repeated denial of out-of-cell recreation. Am. Compl. ¶ 45. At this stage of the proceedings, it is not necessary that Plaintiff list each and every time he was deprived of the opportunity for out-of-cell recreation; that he was deprived of such opportunities on a regular basis is sufficient.

Moreover, even if Plaintiff was regularly provided his allotted five hours per week out-of-cell recreation time, Defendants fail to reference or cite to any cases from this or other Circuits that specifically address the issue of whether continuous confinement to a cell with at most five hours per week of out-of-cell recreation fails to allege a liberty interest when compared to the 110 hours per week of out-of-cell time and two to six hours of outside recreation *per day* provided to inmates in general population. Rather, in addition to the cases discussed above, Eleventh Circuit precedent demonstrates that such a denial is problematic. In *Bass v. Perrin*, the Eleventh Circuit held that "although the plaintiffs were deprived of only two hours of yard time per week, the marginal value of those two hours to a person in Close Management is substantial," and determined that "deprivation of yard time imposes enough of a hardship to qualify as a constitutionally protected interest." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

Plaintiff has alleged that he was kept to a cell for twenty-four hours a day;

deprived of human contact and external stimuli; rarely allowed out-of-cell recreation; and when even when such recreation was allowed, it was only permitted for a maximum of five hours per week—in contrast to the two to six hours *per day* allotted to prisoners in general population.  These allegations are sufficient to survive a motion to dismiss.  Consequently, it is recommended that Defendants' motion to dismiss regarding Plaintiff's Fourteenth Amendment claims be denied.

### 2.   *Defendant Giles*

Defendant Giles contends that even if Plaintiff sufficiently alleges a liberty interest, Plaintiff's mere allegation that Defendant Giles signed the Assignment Memo, despite not being authorized to participate in the Tier II classification process—without also explaining the significance of the signature—is insufficient to state a claim.  Br. in Supp. of Mot. to Dismiss 12-13.  Defendant Giles also argues that Plaintiff fails to establish that he engaged in any other course of action that resulted in depriving Plaintiff of due process.  *Id.*  In response, Plaintiff clarifies that Defendant Giles signed the Assignment Memo "in the place reserved exclusively for the Tier II Counselor, i.e., Defendant Bostick."  Pl.'s Resp. in Opp'n to Mot. to Dismiss 3, ECF No. 31.  Defendant Giles, however, argues that only those facts Plaintiff alleges in his Amended Complaint, and not those propounded in his any of other filings, should be considered when determining whether Plaintiff sufficiently states a claim.  Defs.' Reply Resp. in Supp. of Mot. to Dismiss 3-4, ECF No. 33.  Defendant's argument is unpersuasive.  "[A] plaintiff is free, in defending against a motion to dismiss, to allege without evidentiary support any facts he pleases that are consistent with the complaint, in order to show that there is a

state of facts within the scope of the complaint that if proved . . . would entitle him to judgment." *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992); *see also Kinchen v. Gateway Cmty. Serv. Bd.*, 2006 WL 1549053, *5 n.3 (S.D. Ga. May 31, 2006) (finding permissible Plaintiff's "averment of an apparent agency relationship" for the first time in her briefs in response to defendants' motion to dismiss, "because it is consistent with the allegations of her complaint."). Additionally, courts should liberally construe *pro se* filings. *See, e.g., Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014). Although Plaintiff's Amended Complaint does not indicate where Defendant Giles signed the Assignment Memo or what exactly the signature meant, Plaintiff's collective filings are not contradictory and sufficiently state a claim. The Court will therefore consider all of Plaintiff's factual allegations.

Alternatively, Defendant Giles avers that even taking into consideration Plaintiff's allegation that Giles' signature appears in the place reserved for a Tier II counselor, because Plaintiff also alleges that Defendant Giles is not a member of the Classification Committee and is otherwise not authorized to participate in classification decisions, "[t]he inference that defendants Giles 'act[ed] in the stead of defendant Bostick' . . . is nothing more than a 'sheer possibility' and is thus insufficient to support a claim for relief." Defs.' Reply Resp. in Supp. of Mot. to Dismiss 4-5. This argument is similarly unpersuasive. Taking Plaintiff's allegations as true, Defendant Giles' signature operated to fulfill the requirements needed to recommend Plaintiff's assignment to Tier II—whether authorized or not—and demonstrates that he participated in the classification decision.

Finally, Defendant Giles' argument that if, by signing, he acted in Defendant Bostick's stead, then Plaintiff's claims against Defendant Bostick necessarily fail is likewise meritless. *Id.* at 5. Plaintiff alleges that as a member of the Tier II Classification Committee, Defendant Bostick impermissibly failed to conduct an initial classification hearing, which ultimately deprived Plaintiff of the opportunity to appeal the decision. Am. Compl. ¶ 16. Under Plaintiff's allegations, Defendant Giles signed off on the recommendation—despite his lack of authority to do so—and Defendant Bostick, along with Defendants Ridley and Bobbitt, failed to conduct a hearing, and Defendant McLaughlin ultimately approved the placement. Taking Plaintiff's allegations as true, these actions together deprived Plaintiff of due process and resulted in his continued confinement in administrative segregation. As such, it is recommended that the motion to dismiss regarding the claims against Defendant Giles be denied.

B.    Official Capacity Claims

Plaintiff sues Defendant McLaughlin in his official and individual capacities. "[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (internal citations omitted). However, claims seeking prospective relief against state officials in their official capacity to prevent future constitutional violations are not barred by the Eleventh Amendment. *See generally Ex parte Young*, 209 U.S. 123 (1908). It is unclear from the face of the pleadings whether Plaintiff's claims against Defendant McLaughlin in his official capacity are for damages or

injunctive relief. However, to the extent Plaintiff seeks any damages against Defendant McLaughlin in his official capacity, such claims are barred by the Eleventh Amendment. Thus, it is recommended that the motion to dismiss regarding any such claims be granted.

It is likewise recommended that Plaintiff's claims against Defendant McLaughlin in his official capacity for injunctive relief be dismissed as moot. "[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335-36 (11th Cir. 2001) (internal quotation marks and citation omitted). "If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." *Id.* at 1336.

Plaintiff's seeks prospective relief from the Court, requiring Defendant McLaughlin—and possibly requiring Defendants Bobbitt, Ridley, and Bostick—to release him from Tier II segregation. Am. Compl. ¶ B1. However, after filing the complaint and amended complaint, Plaintiff was transferred to VSP. Not. of Change of Address 1, ECF No. 15. "Prisoners' claims for injunctive relief or declaratory relief regarding prison conditions generally become moot when the prisoner transfers to another prison." *Wahl v. McIver*, 773 F.2d 1169, 1173, 1176 (11th Cir. 1985) (per curiam); *see also Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988) (holding that a claim seeking injunctive relief is moot once the prisoner has been transferred to a different prison). Because Plaintiff is no longer housed at Macon State, the Court can no longer give Plaintiff any meaningful relief regarding his claims for prospective and declaratory relief, thus the claim is moot and "dismissal is required because mootness is

jurisdictional." *Al Najjar*, 273 F.3d at 1336.  It is therefore recommended that the motion to dismiss be granted concerning any claims against Defendant McLaughlin in his official capacity and any claims against the other Defendants for injunctive or declaratory relief.

C.     Claims for Damages

Defendants contend that Plaintiff is not entitled to compensatory or punitive damages.  Br. in Supp. of Mot. to Dismiss 15-18.  For the reasons explained below, this Court agrees.  However, because Plaintiff may be entitled to recover nominal damages, it is recommended that the motion to dismiss be denied.

Title 42, United States Code section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act."  Moreover, "compensatory damages under § 1983 may be awarded only based on *actual injuries* caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated."  *Slicker v. Jackson*, 215 F.3d 1225, 1229 (11th Cir. 2000) (emphasis in original).  Plaintiff, however, has not alleged any physical injury stemming from the alleged constitutional violation.  In fact, Plaintiff seemingly concedes that he has not sustained any physical injury, and instead argues that (1) issues relating to the amount of damages should be addressed at trial and (2) a minority of courts have held that a violation of the Constitution itself can be an independent injury under § 1997e(e).  Pl.'s Resp. in Opp'n of Mot. to Dismiss 6, ECF No. 31.  The Court finds Plaintiff's arguments unpersuasive and therefore recommends granting Defendants' motion to

dismiss concerning Plaintiff's claims for compensatory and punitive damages. However, Plaintiff's allegations, if proven, would support nominal damages, and therefore these claims should be allowed to proceed past the motion to dismiss stage. *Brooks v. Warden*, 800 F.3d 1295, 1308-10 (11th Cir. 2015) (holding that nominal damages are available in § 1983 cases and do not undermine the intent behind the "physical injury" requirement of § 1997e(e)).

### D.     Qualified Immunity

Defendants also argue that Plaintiff's claims against them in their individual capacities should be dismissed because they are entitled to qualified immunity. "Qualified immunity protects government officials performing discretionary duties from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Anderson v. City of Naples*, 501 F. App'x 910, 915-16 (11th Cir. 2012) (internal quotation marks and citation omitted). "The purpose of qualified immunity is to allow officials to carry out discretionary duties without the chilling fear of personal liability or harrassive litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating federal law." *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (internal quotation marks and citation omitted).

"In order to receive qualified immunity, an official must first establish that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred." *Id.* Once the defendant shows that he or she was acting within her discretionary authority, the burden then shifts to the plaintiff to establish that qualified

immunity does not apply.  *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2004).  It is clear that Defendants McLaughlin, Bostick, Bobbitt, and Ridley were acting within their discretionary authority as members of the classification committee when they assigned Plaintiff to the Tier II Program.  *See, e.g., Roberts v. Spielman*, 643 F.3d 899, 903 (11th Cir. 2011) (explaining that "discretionary authority" includes "all actions of a government official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority.") (internal quotation marks and citation omitted).  It is, however, less clear whether Defendant Giles was acting within his discretionary authority, as Plaintiff alleges that Defendant Giles, without authority, signed Plaintiff's "Assignment Memo" "in the place reserved exclusively for the Tier II Counselor, i.e., Defendant Bostick."  Pl.'s Resp. in Opp'n to Mot. to Dismiss 3, ECF No. 31.  If Defendant Giles was acting outside his job responsibilities when he signed the Assignment Memo—because he was not a Tier II counselor and was not authorized to take part in classification decisions—then he may not be entitled to qualified immunity. *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1267 (11th Cir. 2004) ("Pursuing a job-related goal through means that fall outside the range of discretion that comes with an employee's job is not protected by qualified immunity.").  However, as Plaintiff has not raised this issue and as the qualified immunity analysis would be unchanged, the Court declines to determine at this time whether Defendant Giles was acting within his discretionary authority.  Thus, the burden then shifts to Plaintiff to show that Defendants are not entitled to qualified immunity.  "To overcome an official's claim of qualified immunity, the plaintiff must show that: (1) the official violated a

constitutional right; and (2) that right was clearly established at the time of the alleged violation." *Anderson*, 501 F. App'x at 916 (citation omitted).[15]

As found above, Plaintiff has alleged the violation of a constitutional right.[16]  The Court must therefore determine whether that right was clearly established.  "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right."  *Reichle v. Howards*, -- U.S. --, 132 S. Ct. 2088, 2093 (2012) (internal quotation marks and citation omitted) (alteration in original).  "In other words, existing precedent must have placed the statutory or constitutional question beyond debate."  *Id.* (internal quotation marks and citation omitted).  The Eleventh Circuit has explained that:

> [a] right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Maddox v. Stephens*, 727 F.3d 1109, 1121 (11th Cir. 2013).  Furthermore, "[t]he inquiry whether a federal right is clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (internal quotation marks and citation omitted).  "The

---

[15] Courts should use their discretion in determining which prong of the qualified immunity inquiry to address first.  *McCullough*, 559 F.3d at 1205.

[16] Defendants contend that because Plaintiff fails to directly contest their assertion of the qualified immunity defense, the Court should treat this issue as conceded.  Defs.' Reply Resp. in Supp. of Mot. to Dismiss 1, ECF No. 33.  Plaintiff, however, is proceeding *pro se* and as he did attempt to lay out relevant caselaw in support of his argument that he does sufficiently state a claim for relief, the Court construes his arguments as adequate opposition to Defendants' qualified immunity defense.

relevant, dispositive inquiry in determining whether a right is *clearly* established is whether it would be *clear* to a reasonable [state official] that his conduct was unlawful in the situation he confronted." *Id.* (quotation marks and citation omitted) (emphasis and alteration in original).  The court should look "only to binding precedent—cases from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose—to determine whether the right in question was clearly established at the time of the violation." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted).

Taking Plaintiff's allegations as true, Plaintiff alleges that he was kept in a cell for twenty-four hours a day, seven days a week for almost a year, during which time he was deprived of virtually all contact with other people, was not permitted to see outside his cell, and was provided with no reading material, including religious materials.  It is clear from the caselaw discussed *supra* that these allegations taken in the aggregate constitute an Eighth Amendment violation.  Furthermore, he's clearly alleged that these conditions contrast with those experienced by inmates in general population.  This conduct is of the type that is "so egregious that a constitutional right was clearly violated." *Maddox*, 727 F.3d at 1121.  The Court thus declines to recommend dismissal at this stage of the proceedings.  Defendant's motion to dismiss regarding qualified immunity should be denied.

## IV.    Plaintiff's Pending Motions

Plaintiff filed various miscellaneous motions: Motion to Appoint Counsel (ECF No. 27); Motion to Stay Ruling on Defendants' Motion to Dismiss until the Court rules

on Plaintiff's motion to appoint and motions to supplement (ECF No. 28); and Motion for

leave to file Surreply in Opposition of Defendants' Motion to Dismiss (ECF No. 39).  For

the reasons explained below, these motions are denied.

Under 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any

person unable to afford counsel."  There is, however, "no absolute constitutional right to

the appointment of counsel" in a § 1983 lawsuit.  *Poole v. Lambert*, 819 F.2d 1025, 1028

(11th Cir. 1987) (per curiam).  Appointment of counsel is a privilege that is justified only

by exceptional circumstances.  *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982).  In

deciding whether legal counsel should be provided, the Court considers, among other

factors, the merits of Plaintiff's claims and the complexity of the issues presented.  *Holt*

*v. Ford*, 862 F.2d 850, 853 (11th Cir. 1989) (en banc).  Plaintiff has ably set forth the

essential factual allegations underlying his claims and the applicable legal doctrines are

readily apparent.  Plaintiff has not alleged the exceptional circumstances justifying

appointment of counsel under *Holt*.  Accordingly, Plaintiff's motion for appointment of

counsel is denied.

Plaintiff's motion for leave to file a sur-reply in opposition of Defendants' motion

to dismiss is likewise denied.  Local Rule 7.3.1 provides that "[b]riefing of any motion or

issue concludes when the movant files a reply brief."  Additionally, sur-reply briefs are

"not favored," however if a party wishes to file one, he "must move in writing for

permission to do so within fourteen (14) days of the filing of the brief to which reply is

desired."  Defendants filed their Reply in Support of the motion to dismiss on September

1, 2015.  (ECF No. 33.)  It was not until September 30, 2015 that Plaintiff filed his

motion for leave to file a sur-reply, several days outside the fourteen day window.  (ECF No. 39.)   Moreover, as discussed above, the Court finds the issues to be adequately briefed.  Finally, Plaintiff's motion to stay the proceedings until the Court has ruled on his motions to supplement and his motion to appoint is denied.

## CONCLUSION

For the reasons explained above, it is recommended that Defendants motion to dismiss (ECF No. 21) be granted in part, dismissing Plaintiff's claims against Defendant McLaughlin in his official capacity and Plaintiff's claims for injunctive relief, declaratory relief, compensatory damages, and punitive damages, and denied in part, retaining Plaintiff's Fourteenth Amendment claims against Defendants in their individual capacities for nominal damages.  It is also recommended that Plaintiff motion for a preliminary injunction (ECF No. 31-1) and his motions to supplement his complaint (ECF Nos. 19, 35, 46, 48) be denied.  Finally, Plaintiff's motions to appoint counsel (ECF No. 27), to stay the proceedings (ECF No. 28), and for leave to file a surreply (ECF No. 39) are denied.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof.  The district judge shall make a de novo determination of those portions of the Recommendation to which objection is made.  All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a

report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

SO ORDERED and RECOMMENDED, this 10th day of March, 2016.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE